# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Joy Group Oy,                                          Civil No. 15-3676 (DWF/FLN)

                        Plaintiff,

v.                                                     **MEMORANDUM
                                                       OPINION AND ORDER**

Supreme Brands L.L.C.,

                        Defendant.

_____

Keith A. Vogt, Esq., and Paul Allen Godfread, Esq., Godfread Law Firm, counsel for
Plaintiff.

Joel D. Nesset, Esq., Nadia B. Hasan, Esq., Steven Paul Katkov, Esq., and Thomas P.
Kane, Esq., Cozen O'Connor, counsel for Defendant.
_____


# INTRODUCTION

This case involves a dispute between Plaintiff Joy Group Oy ("Plaintiff") and

Defendant Supreme Brands L.L.C. ("Defendant") over who owns the rights to various

trademarks.  The matter is before the Court on a Motion to Dismiss Plaintiff's Amended

Complaint brought by Defendant.  (Doc. No. 27.)  For the reasons set forth below, the

Court grants the motion.

# BACKGROUND

The facts of this case were previously set forth in the Court's December 10, 2015

and January 14, 2016 orders denying Plaintiff's first and second motions for a temporary

restraining order, respectively. (Doc. Nos. 33, 44.) The Court summarizes the key facts below.

Plaintiff alleges that on May 18, 2012, it acquired the rights, by assignment from Torspo Hockey International, Inc. ("THI"), to the TORSPO trademark, U.S. Trademark Registration 3,022,926, for use in connection with hockey sticks and replacement blades for hockey sticks (the "TORSPO Trademark Registration"). (Doc. No. 22 ("Am. Compl.") ¶¶ 6-7.) Plaintiff alleges that it provided THI over $800,000 in financing in exchange for the assignment. (*Id.*)

On May 15, 2014, THI filed a petition for relief under Chapter 11 of the United States Bankruptcy Code; it is no longer an operating entity. (*Id.* ¶ 8.)

On or around December 17, 2014, Plaintiff recorded the assignment of the TORSPO Trademark Registration with the United States Patent and Trademark Office ("USPTO"). (*Id.* ¶ 9, Ex. 3.) On March 26, 2015, Plaintiff filed an intent-to-use ("ITU") trademark application for the designation TORSPO for use in connection with clothing (the "TORSPO Trademark Application"). (*Id.* ¶ 10.) The TORSPO Trademark Application is currently pending. (*Id.*) Plaintiff also alleges that it owns various international registrations and pending international trademark applications for the designation TORSPO for use in connection with similar goods. (*Id.* ¶¶ 6, 7, 9, 10; Exs. 1, 2, 3, 4.)[1]

---

[1]      The Court refers to Plaintiff's applications and registrations for international trademarks as the "International Trademarks."

On July 7, 2015, Defendant recorded an assignment, described as a Security Interest, against the TORSPO Trademark Application and the TORSPO Trademark Registration.  (*Id*. ¶ 11, Ex. 5.)  The assignment, which was conveyed by Village Bank to Defendant, is based on a Uniform Commercial Code ("UCC") Financing Statement executed by THI on July 18, 2007.  (*Id*.)  On July 10, 2015, Defendant recorded another assignment, described as a Security Interest, against the TORSPO Trademark Application and the TORSPO Trademark Registration.  (*Id*. ¶ 12, Ex. 6.)  This assignment, which was conveyed by Alliance Bank to Defendant, is also based on a UCC Financing Statement executed by THI in July 2007.

On or around September 1, 2015, Plaintiff received a Notification of Disposition of Collateral issued by Defendant announcing the sale of the business assets of THI, including THI's trademarks.  (*Id*. ¶ 20.)  Defendant confirmed that it intended to auction off the rights to the TORSPO Trademark Registration and the TORSPO Trademark Application.  (*Id*. ¶ 21.)  The sale was originally scheduled for September 23, 2015, but was postponed in light of the present action.

In the Amended Complaint, Plaintiff asserts eleven counts:  Counts I through IX seek declarations that Defendant has no right to sell various trademark applications and foreign registrations; Count X seeks a declaration that the assignments from Village Bank and Alliance Bank to Defendant are null and void[2]; and Count XI is a claim for injunctive

---

[2]     Defendant has moved to dismiss Count X on the merits, arguing that Plaintiff has not provided any legal basis to find that the assignments of security interests here are null

(Footnote Continued on Next Page)

relief.  (*See* Am. Compl.)  In essence, Plaintiff seeks a declaration that Defendant has no interest in, and that Plaintiff is the owner of, various TORSPO applications and registrations "without interference from [Defendant] or any subsequent purchaser and that [Defendant] has no right to sell the trademark [applications and registrations] . . . ." (*Id.* ¶¶ 29, 36, 42, 48, 54, 60, 66, 72 & 79.)  In addition, Plaintiff seeks an injunction barring Defendant from interfering with Plaintiff's rights in the TORSPO applications and registrations.  (*Id.* ¶ 87.)

After the Court denied Plaintiff's first motion for a temporary restraining order, Defendant gave notice of its intent to sell the collateral by public auction on December 30, 2015.  (Doc. No. 39 ("Godfread Decl."), Ex. B.)  In the notice, Defendant indicated that the sale would include, among other things, "General Intangibles," including trademarks.  (*Id.*)  Defendant also included the following:  "**Please Take Further Notice** that Secured Party's rights in one or more items of the Collateral are the subject of pending litigation in the United States District Court for the District of Minnesota, in the matter of <u>Joy Group Oy v. Supreme Brands L.L.C.</u>, Civil File No. 15-3676 (DWF/FLN)."  (*Id.*)

On December 24, 2015, Plaintiff filed a motion, seeking an order enjoining Defendant from including International Trademarks in the sale and specifically,

---

(Footnote Continued From Previous Page)

and void.  (Doc. No. 29 at 11-12.)  Plaintiff does not offer any arguments in opposition. Therefore, Count X is properly dismissed.

"directing [Defendant] to put all potential purchasers on notice that the International Trademarks are excluded from the sale." (Doc. No. 38 at 8.) The Court denied the motion.

Defendant now moves to dismiss Plaintiff's Amended Complaint in its entirety, arguing that the Amended Complaint fails to state a claim upon which relief can be granted.

## DISCUSSION

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id*. at 555. As the United States Supreme Court reiterated, "[t]hreadbare recitals

of the elements of a cause of action, supported by mere conclusory statements," will not

pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing

*Twombly*, 550 U.S. at 555).  In sum, this standard "calls for enough fact[s] to raise a

reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550

U.S. at 556.

 As a threshold matter, Defendant argues that the Amended Complaint fails to

allege facts that would give rise to an actual case or controversy and that Plaintiff is, in

effect, seeking an improper advisory opinion determining the rights of Plaintiff,

Defendant, and any potential purchaser of the collateral, in the event of a hypothetical

dispute involving international trademark law.  The Court agrees.

 The Declaratory Judgment Act provides that, "[i]n a case of actual controversy

within its jurisdiction . . . any court of the United States . . . may declare the rights and

other legal relations of any interested party seeking such declaration, whether or not

further relief is or could be sought."  28 U.S.C. § 2201(a).  To satisfy the

case-or-controversy requirement, a dispute must be "definite and concrete, touching the

legal relations of parties having adverse legal interests," "real and substantial," and

seeking "specific relief through a decree of a conclusive character, as distinguished from

an opinion advising what the law would be upon a hypothetical state of facts."

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citations omitted).  The

Supreme Court has summarized:  "Basically, the question in each case is whether the

facts alleged, under all the circumstances, show that there is a substantial controversy,

between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.*

Here, Plaintiff seeks relief related only to the International Trademarks.[3]  In particular, Plaintiff seeks a declaration that Defendant cannot use the laws of Minnesota to impair the rights it holds in the International Trademarks as that would be a violation of the Supremacy Clause of the United States Constitution.  (Doc. No. 41 at 6.) According to Plaintiff, the relief it seeks is "based on the legal argument that any attempt by [Defendant] to use Article 9 [of the Minnesota UCC] to reach the International Trademarks is a violation of Article VI of the Constitution."  (Doc. No. 41 at 6.)[4]

Article 9 of the Minnesota UCC provides a comprehensive scheme for the regulation of security interests that are obtained in personal property to secure a debt.  *See generally* Minn. Stat. § 336.9-101, *et seq*.  The 2007 UCC Financing Statements attached to Plaintiff's Amended Complaint demonstrate that Village Bank and Alliance Bank perfected security interests in various assets of THI *before* Plaintiff allegedly acquired

---

[3]     Plaintiff acknowledges that "the parties have narrowed their dispute" and that Plaintiff "has agreed that [Defendant] may auction off [the TORSPO Trademark Registration] and has therefore removed any declaratory judgment claim relating to that." (Doc. No. 41 at 2.)  Plaintiff similarly represented in its Reply in Support of Temporary Restraining Order, that the relief sought in the Amended Complaint only relates to the "TORSPO International Trademarks."  (Doc. No. 23 at 3.)

[4]     Plaintiff submits that when the United States adopted the World Trade Organization's Agreement on Trade-Related Aspects of Intellectual Property Rights ("TRIPS"), it became the supreme law of the land, and under the terms of the treaty, the legal disposition of any rights in the International Trademarks must be resolved by the governing body that issued the registration.  (Doc. No. 41 at 7.)

trademark rights via assignment in 2012.  (Am. Compl. ¶¶ 11, 12, Exs. 5, 6.)  Village

Bank and Alliance Bank assigned their interests in THI's assets, including "all inventory,

accounts, equipment and *general intangibles*" to Defendant.  (Compl. ¶¶ 11, 12, Exs. 5, 6

(emphasis added).)  These "general intangibles" include the TORSPO Trademark

Registration.[5]  Thus, Defendant obtained the rights to all property subject to the security

interest, including the TORSPO Trademark Registration.

Plaintiff does not dispute that Defendant can auction off the TORSPO Trademark

Registration.  Instead, Plaintiff seeks a determination that the International Trademarks

may not be properly auctioned within Minnesota.  (Doc. No. 41 at 9.)  More precisely,

Plaintiff appears to seek a declaration from the Court that any such sale of the TORSPO

Trademark Registration, including the goodwill and associated rights and interests, will

not impair Defendant's rights in the International Trademarks.  In fact, Plaintiff argues

that "[a]ny attempt to use Article 9 of the [UCC] to reach to the TORSPO International

Trademarks" is unconstitutional, and Plaintiff seeks to prevent Defendant from asserting

---

[5]     Minn. Stat. § 336.9-102(a)(42) defines "general intangible" as:

> [A]ny personal property, including things in action, other than accounts,
> chattel paper, commercial tort claims, deposit accounts, documents, goods,
> instruments, investment property, letter of credit rights, letters of credit,
> money, and oil, gas, or other minerals before extraction.  The term includes
> payment intangibles and software.

In the comments for that statutory provision, the definition of "general intangible"
is further described as "the residual category of personal property, including things
in action, that is not included in the other defined types of collateral.  Examples
are various categories of intellectual property . . . ."  (*Id*. cmt. 5(d).)

that the security interests it holds have extraterritorial reach.  (*See, e.g.*, Doc. No. 23 at 3.)

However, Defendant does not assert that it has a security interest in any application or

registration filed by Plaintiff, including Plaintiff's International Trademarks.  Nor does

Defendant intend to sell Plaintiff's International Trademarks.[6]  In any future sale,

Defendant would only be able to transfer its "rights in the collateral," which is the

property subject to its security interest.  *See* Minn. Stat. §§ 336.9-617(a)(1);

336.9-102(12).  Thus, if Plaintiff's interests in the TORSPO International Trademarks are

not subject to Defendant's security interest, they would not be part of Defendant's

collateral, and would not be affected.

Further, any future dispute regarding what effect, if any, the sale of the TORSPO

Trademark Registration may have on the Plaintiff's rights in the International

Trademarks is speculative and falls outside the scope of the Court's subject-matter

jurisdiction.  First, there is not an identifiable or immediate controversy involving any of

the International Trademarks.  Second, as Plaintiff acknowledges, the appropriate forum

for any dispute concerning Plaintiff's rights in any of the International Trademarks will

lie in the respective foreign country's system for adjudicating trademark rights.  (*See*

Doc. No. 23 at 5.)  Third, Plaintiff has not pointed to any authority that would suggest

that the Court has jurisdiction to declare the scope of its rights in the International

---

[6]     Defendant intends to sell the TORSPO Trademark itself, along with all other
collateral subject to its security interests.  (Doc. No. 29 at 5 n.6.)  Defendant recognizes,
however, that the sale of the TORSPO Trademark may affect Plaintiff's rights under
various applications and registrations.

Trademarks under foreign law.  Fourth, the effect that any future sale might have on Plaintiff's rights in the International Trademarks will depend, at least as an initial matter, on what rights and interests are subject to Defendant's security interests, and there is no immediate controversy on that point at least until the sale of the collateral has occurred. For these reasons, any opinion by the Court on the relative rights of Plaintiff, Defendant, and a potential yet-to-be determined third party purchaser of the collateral in the context of a hypothetical, future dispute involving the impact of that sale on the International Trademarks falls outside of the Court's jurisdiction.

For the reasons discussed above, any dispute regarding the TORSPO International Trademarks remains speculative and there is no case or controversy.  Therefore, the Court lacks jurisdiction and the Amended Complaint fails to state a claim upon which relief can be granted.  The Court grants Defendant's motion to dismiss.

## CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS ORDERED** that Defendant's Motion to Dismiss (Doc. No. [27]) is **GRANTED** and Plaintiff's Amended Complaint (Doc No. [22]) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.


Dated:  May 16, 2016                          s/Donovan W. Frank
                                              DONOVAN W. FRANK
                                              United States District Judge